IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:10-CV-121-D

RICHARD SAMPSON,                          )
                                          )
                        Plaintiff,        )
                                          )
            v.                            )           **ORDER**
                                          )
MIKE LEONARD, BRAD BAZEMORE,              )
LEI ZHENG, and HOSPIRA, INC.,             )
                                          )
                        Defendants.       )

On March 31, 2010, Richard Sampson ("plaintiff" or "Sampson") filed suit in Halifax County

Superior Court against three former co-workers Mike Leonard, Brad Bazemore, Lei Zheng

(collectively "individual defendants"), and against his former employer Hospira, Inc. ("Hospira")

[D.E. 1-1]. Sampson seeks relief under North Carolina law and alleges that defendants wrongfully

discharged him from employment in 2007 in violation of North Carolina public policy, that

defendants intentionally and negligently inflicted severe emotional distress, that defendants injured

his business reputation, and that defendants engaged in a civil conspiracy to wrongfully discharge

him. On September 3, 2010, defendants removed the action to this court, asserted that this court has

subject-matter jurisdiction based on diversity, and asserted that Sampson fraudulently joined

Leonard, Bazemore, and Zheng [D.E. 1]. On September 10, 2010, defendants filed a motion to

dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 6]. On

October 6, 2010, plaintiff filed a motion to remand the action to state court [D.E. 10]. As explained

below, plaintiff's motion to remand is denied, defendants Leonard, Bazemore, and Zheng are

dismissed, and defendants' motion to dismiss is granted in part and denied in part. The sole

remaining claim in this action is Sampson's wrongful discharge in violation of North Carolina public

policy claim against Hospira.

I.

Initially, the court addresses Sampson's motion to remand the action to Halifax County Superior Court. In support, Sampson argues that all defendants are citizens of North Carolina and that the amount in controversy does not exceed $75,000, exclusive of interest and costs. See 28 U.S.C. §1332(a). Thus, Sampson contends that this court lacks subject-matter jurisdiction.

Absent a proper basis for subject-matter jurisdiction, a removed case must be remanded to state court. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). Section 1441(a) permits defendants to remove from state to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal courts have original jurisdiction of cases "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1); see Roche v. Lincoln Prop. Co., 373 F.3d 610, 613 (4th Cir. 2004), rev'd on other grounds, 546 U.S. 81 (2005). Section 1332 requires "complete diversity such that the state of citizenship of each plaintiff must be different from that of each defendant." Athena Auto., Inc. v. DiGregorio, 166 F.3d 288, 290 (4th Cir. 1999). Section 1441(b) further proscribes removal of civil actions unless "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

As for the amount in controversy, Sampson's annual salary at the time of his 2007 discharge was $44,242, and he seeks back pay. Sampson also seeks punitive damages and has failed to submit a binding stipulation or affidavit stating that he limits his damages to less than section 1332(a)'s jurisdictional amount. Thus, the amount in controversy exceeds well over $75,000. See, e.g., St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938); Choice Hotels Int'l, Inc. v. Shiv Hospitality, L.L.C., 491 F.3d 171, 176 (4th Cir. 2007); Rota v. Consolidation Coal Co., 175 F.3d 1016, 1999 WL 183873, at *1 (4th Cir. 1999) (per curiam) (unpublished table decision).

2

As for whether complete diversity exists, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). Here, Hospira submitted a declaration from its in-house legal counsel stating that Hospira is incorporated in Delaware and its principal place of business is in Illinois. Thus, Sampson and Hospira are diverse. As for the citizenship of Leonard, Bazemore, and Zheng, defendants concede that each (like Sampson) is a citizen of North Carolina. Defendants contend, however, that the individual defendants are nominally non-diverse defendants in the action and should be disregarded for purposes of evaluating diversity jurisdiction under the fraudulent joinder doctrine.

The fraudulent joinder doctrine "permits removal when a non-diverse party is (or has been) a defendant in the case." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). The fraudulent joinder doctrine allows a district court to assume jurisdiction over a case even if complete diversity is lacking in order to dismiss non-diverse defendants and thereby retain proper diversity jurisdiction. See id. To establish the fraudulent joinder of a named defendant, "the removing party must demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is no possibility that the plaintiff [can] establish a cause of action against the in-state defendant in state court." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (quotations omitted & emphasis removed).[1]

To determine whether joinder is fraudulent, "the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) (quotation omitted). A defendant who alleges fraudulent joinder "bears a heavy burden [because] it must show that the plaintiff cannot establish a claim even after resolving

---

[1]The term "fraudulent joinder" is a misnomer. The fraudulent joinder doctrine requires neither a showing of fraud nor joinder. See Mayes, 198 F.3d at 461 n.8.

all issues of law and fact in the plaintiff's favor." Hartley, 187 F.3d at 424. "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Id.

Here, the individual defendants contend that Sampson cannot establish the claims against them in state court. Thus, the court turns to whether there is any possibility that Sampson can establish claims against the individual defendants in state court. See, e.g., Hartley, 187 F.3d at 424.

In count one, Sampson alleges that the individual defendants wrongfully discharged him from employment in violation of North Carolina public policy. See Compl. ¶¶ 23–30. Sampson, however, fails to state a claim upon which relief can be granted against the individual defendants because these individuals were not his "employer." Under North Carolina law, a plaintiff may only bring a wrongful discharge action against the plaintiff's employer, not against the employer's agents (such as co-workers or supervisors). See, e.g., Iglesias v. Wolford, 539 F. Supp. 2d 831, 839 (E.D.N.C. 2008) (citing Garner v. Rentenbach Constructors, Inc., 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999); Sides v. Duke Univ., 74 N.C. App. 331, 343, 328 S.E.2d 818, 827 (1985), overruled on other grounds by Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 493 S.E.2d 420 (1997)). Accordingly, there is no possibility that Sampson can establish his wrongful discharge claim against the individual defendants.

In count two, Sampson alleges that the individual defendants intentionally and negligently inflicted severe emotional distress. See Compl. ¶¶ 31–36. Essentially, he alleges that the individual defendants' conduct associated with terminating his employment was extreme and outrageous or reckless and caused him severe emotional distress. See id.

Sampson's claim of intentional infliction of emotional distress ("IIED") requires him to show: (1) that the defendants engaged in extreme and outrageous conduct; (2) that the conduct was intended to cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress. See Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992). To be considered

4

"extreme and outrageous" the conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Whether conduct qualifies as "extreme and outrageous" is a question of law for the court. See, e.g., Lenins v. K-Mart Corp., 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990).

Under North Carolina law, it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of IIED. See, e.g., Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 544–45 (E.D.N.C. 2008); Efird v. Riley, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004); Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000); Atkins v. USF Dugan, Inc., 106 F. Supp. 2d 799, 810–11 (M.D.N.C. 1999). "[L]iability clearly does not extend to mere insults, indignities, [or] threats." Hogan, 79 N.C. App. at 493, 340 S.E.2d at 123 (citing Restatement (Second) of Torts § 46 cmt. d (1965)). Rather, "[i]n cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching." Bratcher, 545 F. Supp. 2d at 545 (collecting cases).

Here, Sampson has failed as a matter of law to allege conduct sufficient to sustain his IIED claim against the individual defendants. See Compl. ¶¶ 31–36. As such, Sampson has no possibility of establishing his IIED claim against the individual defendants. See, e.g., Bratcher, 545 F. Supp. 2d at 545; Hogan, 79 N.C. App. at 493–94, 340 S.E.2d at 122–23.

Sampson's negligent infliction of emotional distress ("NIED") claim relies on the same allegations he contends support his IIED claim. See Compl. ¶¶ 31–36. "When the plaintiff's complaint alleges acts of discrimination that are intentional in nature, and simply concludes that the acts were committed negligently [or recklessly], [the complaint] is insufficient to state a claim for negligent infliction of emotional distress." Barbier v. Durham Cnty. Bd. of Educ., 225 F. Supp. 2d

5

617, 631 (M.D.N.C. 2002); see Mitchell v. Lydall, Inc., 16 F.3d 40, 1994 WL 38703, at *3 (4th Cir. 1994) (per curiam) (unpublished table decision); Bratcher, 545 F. Supp. 2d at 545; Sheaffer v. County of Chatham, 337 F. Supp. 2d 709, 734 (M.D.N.C. 2004); Thomas, 157 F. Supp. 2d at 637. Moreover, in order to survive a motion to dismiss, plaintiff must first allege some evidence of negligence on the part of defendants. If there is no underlying "negligence," there is no claim for NIED. Bratcher, 545 F. Supp. 2d at 545; Best v. Duke Univ., 337 N.C. 742, 752, 448 S.E.2d 506, 511–12 (1994).

Here, Sampson's NIED claim fails because Sampson has alleged only intentional or reckless acts — not negligent acts — and such allegations cannot form the basis of a claim for negligent infliction of emotional distress. See, e.g., Mitchell, 1994 WL 38703, at *3; Bratcher, 545 F. Supp. 2d at 545–46. Accordingly, Sampson has no possibility of establishing his NIED against the individual defendants.

In count three, Sampson alleges that individual defendants injured his business reputation. See Compl. ¶¶ 37–41. Sampson, however, has failed to cite a single appellate decision from North Carolina recognizing this tort.[2] Moreover, this court concludes that Sampson has no possibility of establishing this claim against the individual defendants. Cf. Time-Warner Entm't-Advance/ Newhouse P'ship v. Carteret-Craven Elec. Memb. Corp., 506 F.3d 304, 314 (4th Cir. 2007) (a federal court sitting in diversity "should not create or expand [a] State's public policy" (alteration in original)); Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 370 (4th Cir. 2005) (a federal court sitting in diversity must predict how the state's supreme court would rule on a given issue).

---

[2]In his brief opposing the motion to dismiss, Sampson claims that two cases support recognizing this tort: Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc., 152 F.3d 313 (4th Cir. 1998), and Duquesne Energy, Inc. v. Shiloh Indus. Contractors, 149 N.C. App. 227, 560 S.E.2d 388 (2002). The court has reviewed these cases and rejects the argument. Beard Plumbing involved a plaintiff alleging negligence and breach of warranty under Virginia law. Duquesne Energy involved a plaintiff alleging a breach of contract under North Carolina law.

6

In count four, Sampson alleges that the defendants engaged in a civil conspiracy to wrongfully discharge him. See Compl. ¶¶ 42–52. "Because a corporation is a single legal entity, it cannot conspire with itself." Iglesias, 539 F. Supp. 2d at 835–36 (collecting cases). "A corporation's officer, employees, or agents are mere extensions of the corporation, and any agreement between such personnel (or between such personnel and the corporation they serve) is therefore not a conspiracy." Id. at 36. Thus, Sampson has no possibility of establishing his civil conspiracy claim in count four against the individual defendants.

In sum, the court concludes that Sampson fraudulently joined the individual defendants. Accordingly, the court dismisses Leonard, Bazemore, and Zheng from the action. See, e.g., Capparelli v. Amerifirst Home Improvement Fin. Co., 535 F. Supp. 2d 554, 561 (E.D.N.C. 2008).

## II.

Next, the court addresses Hospira's motion to dismiss for failure to state a claim upon which relief can be granted. In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50. Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference,

7

and matters of which a court may take judicial notice." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.,</u> 551 U.S. 308, 322 (2007).

As for Sampson's IIED claim, NIED claim, injury-to-business reputation claim, and civil-conspiracy claim, those claims fail against Hospira for the same reasons that they fail against the individual defendants. Thus, the court grants Hospira's motion to dismiss counts two, three, and four.

As for count one, Sampson alleges wrongful discharge in violation of North Carolina public policy. <u>See</u> Compl. ¶¶ 23–30. Sampson, who is Lumbee, alleges that Hospira wrongfully discharged him due to his race after he impregnated an African-American co-worker. <u>See id.</u> The court concludes that Sampson's race-discrimination allegation is sufficient to state a claim of wrongful discharge in violation of public policy under North Carolina law with the source of public policy being N.C. Gen. Stat. § 143-422.2. <u>See, e.g., Brewer v. Cabarrus Plastics, Inc.,</u> 130 N.C. App. 681, 685–87, 504 S.E.2d 580, 583–84 (1998), <u>disc. rev. denied,</u> 350 N.C. 91, 527 S.E.2d 662 (1999); <u>see also Simmons v. Chemol Corp.,</u> 137 N.C. App. 319, 322, 528 S.E.2d 368, 370 (2000); <u>cf. Murrell v. Ocean Mecca Motel, Inc.,</u> 262 F.3d 253, 257–58 (4th Cir. 2001). Thus, the court denies Hospira's motion to dismiss count one.

### III.

As explained above, the court DENIES plaintiff's motion to remand [D.E. 10], DISMISSES Leonard, Bazemore, and Zheng as defendants, and GRANTS in part and DENIES in part Hospira's motion to dismiss [D.E. 6]. The sole remaining claim is plaintiff's wrongful discharge in violation of North Carolina public policy claim against Hospira.

SO ORDERED. This 12 day of January 2011.

JAMES C. DEVER III
United States District Judge

8